IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Richmond Division

| | | |
|---|---|---|
| JOHN T. WALTON, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.  3:14CV628 (RCY) |
| | ) | |
| GREENSVILLE CORRECTIONAL | ) | |
| CENTER, *et al.*, | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

Plaintiff John T. Walton ("Walton"), proceeding *pro se*, brings this action against

Defendants, the Virginia Department of Corrections ("VDOC"), Greensville Correctional Center

("GCC"), Harold W. Clarke, and Eddie L. Pearson (collectively "Defendants"). [1]

Walton filed his First Amended Complaint (First Am. Compl., ECF No. 5) on October 1,

2014.[2]  The First Amended Complaint does not refer to a specific statute, but it arguably alleges

a failure by his employer, GCC, to accommodate Walton's religious beliefs, in violation of Title

VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq*.  On October 24,

2014, Defendants filed their Motion to Dismiss (Defendant's [sic] Mot. to Dismiss ("Defs.' Mot.

to Dismiss"), ECF No. 11) and supporting memorandum (Mem. of Law in Supp. of Defs.' Mot.

to Dismiss ("Defs.' Mem. Supp."), ECF No. 12), arguing that the First Amended Complaint

---

[1] In his proposed Second Amended Complaint, Walton adds two additional parties, Benjamin Wright, former
Warden of GCC, and Joyce Johnson, Human Resource Manager at GCC.

[2] The First Amended Complaint (ECF No. 5) was a duplicate of the original Complaint (ECF No. 4) with the
exception of the addition of the names of Clarke, Director of the Virginia Department of Corrections, and Pearson,
Warden of GCC.  Plaintiff explains that his First Amended Complaint was filed in response to the Clerk "advising
him that he needed to advise the [C]ourt of a person that he wanted the complaint served on since the complaint
could not be served on an organization but a person." (Resp. to Defs. Mem. of Law in Opp'n to Pl.'s Mot. for Leave
to File Second Am. Compl. ("Pl.'s Resp. to Defs.' Opp'n"), ECF No. 17 at 5.)

should be dismissed pursuant to Federal Rules of Civil Procedure "8(a), 10(b), 12(b)(1) and/or 12(b)(6)." (Defs.' Mem. Supp. at 1.) Walton responded (ECF No. 13), and Defendants filed a reply (ECF No. 14).

On December 4, 2014, Walton filed Plaintiff's Motion for Leave to File Second Amended Complaint (Pl.'s Mot. for Leave to File Second Am. Compl. ("Mot. to Amend"), ECF No. 15). Filed as an exhibit to the Motion to Amend is Walton's proposed Second Amended Complaint (Second Am. Compl., ECF No. 15-1). The proposed Second Amended Complaint seeks to cure alleged deficiencies noted by Defendants in their memoranda in support of their Motion to Dismiss, includes a specific reference to Title VII of the Civil Rights Act of 1964 with regard to Count One, sets forth the allegations and claims in separately numbered paragraphs, adds two additional defendants (Benjamin Wright and Joyce Johnson), and adds two counts related to alleged violations of VDOC policies and procedures, in particular VDOC "Operating Procedure 101.2 VIII B" and VDOC "Policy on Posting of Specialized Post." (Second Am. Compl. ¶¶ 19-20.) Defendants oppose Walton's Motion to Amend. (Mem. of Law in Opp'n to Pl.'s Mot. for Leave to File Second Am. Compl. ("Defs.' Opp'n"), ECF No. 16.)

For the reasons set forth herein, Plaintiff's Motion for Leave to File Second Amended Complaint will be GRANTED, and Defendant's [sic] Motion to Dismiss will be GRANTED IN PART and DENIED IN PART.

## I. WALTON'S SECOND AMENDED COMPLAINT

Finding it appropriate to do so, the Court will grant Walton's Motion to Amend. Moreover, for the reasons set forth below, the Court will apply Defendants' Motion to Dismiss to the applicable portions of Walton's Second Amended Complaint.

## A. Walton's Motion to Amend

A party may amend its pleading once as a matter of course within twenty-one days after serving it or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1). Walton amended his original Complaint once in accordance with Federal Rule of Civil Procedure 15(a)(1). (First Am. Compl., ECF No. 5.) For additional amendments, a party is permitted to amend its pleading "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). A "court should freely give leave when justice so requires." *Id.* "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Conley v. Gibson*, 355 U.S. 41, 48 (1957)). The Fourth Circuit has interpreted Rule 15(a) to provide that "'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962))).

Defendants assert that Walton's motion should be denied because it was not accompanied by a written brief, pursuant to Local Civil Rule 7(F)(1). However, given the policy in favor of resolving cases on their merits, the Court declines this invitation. "The federal rule policy of deciding cases on the basis of the substantive rights involved rather than on technicalities requires that plaintiff be given every opportunity to cure a formal defect in his pleading." *Ostrzenski v. Seigel*, 177 F.3d 245, 252-53 (4th Cir. 1999) (quoting 5A Charles Allen Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1357 (2d ed. 1990)). Furthermore, the

3

Court notes that Walton is proceeding *pro se* and that "[a] document filed *pro se* is 'to be liberally construed.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* (citation and internal quotation marks omitted).

### 1. Bad Faith and Prejudice

There is no indication of bad faith on the part of Walton or prejudice to the Defendants. Walton, who is *pro se*, moved to file the proposed Second Amended Complaint within several weeks after Defendants' Motion to Dismiss was briefed, and he properly attached the proposed Second Amended Complaint. Walton explains that he consulted the United States District Court Eastern District of Virginia Richmond Division *Pro Se* Litigant Handbook to help write his complaint and subsequent pleadings. (Pl.'s Resp. to Defs.' Opp'n at 5.)

Furthermore, the substantive differences between the First Amended Complaint and the proposed Second Amended Complaint are few. The differences include alleged facts that would come into the record through discovery, two additional defendants, and two additional claims. As discussed below, the Court dismisses the additional two defendants and new claims.[3] As such, the proposed Second Amended Complaint does little more than add and clarify alleged facts relevant to the Title VII claim and correct formatting errors found in the First Amended Complaint. Granting the Motion to Amend, therefore, is not prejudicial to the Defendants.

### 2. Futility of Amendment

Defendants argue that Walton's Motion to Amend should be denied under the doctrine of futility. "Leave to amend . . . should only be denied on the ground of futility when the proposed

---

[3] As discussed *infra*, these defendants and claims are dismissed by the Court under the *in forma pauperis* screening provisions of 28 U.S.C. § 1915(e)(2)(B)(ii).

4

amendment is clearly insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510 (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980), *cert. dismissed*, 448 U.S. 911 (1980)). "[A] district court may deny leave if amending the complaint would be futile—that is, 'if the proposed amended complaint fails to satisfy the requirements of the federal rules,'" including Rule 12(b)(6). *United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008) (quoting *United States ex rel. Fowler v. Caremark RX, LLC*, 496 F.3d 730, 740 (7th Cir. 2007)).

Arguably, amendment is futile with regard to the Second Amended Complaint's newly alleged claims and newly added defendants. However, the Court finds that amendment is not futile with regard to Walton's Title VII claim against VDOC and GCC. Indeed, as explained in detail below, the Court finds that Walton has sufficiently alleged a cognizable Title VII claim against VDOC and GCC. Therefore, with regards to that claim, the Second Amended Complaint is not "insufficient or frivolous on its face." *Johnson*, 785 F.2d at 510 (citation omitted).

While some of the amended claims are arguably futile, rather than granting Walton's Motion to Amend and "cherry-picking" out the futile claims, the Court finds it more appropriate to grant Walton's Motion in full. However, as Walton is proceeding *in forma pauperis* ("IFP"), following the granting of Walton's Motion, the Court will use its statutory authority to evaluate the Second Amended Complaint and *sua sponte* dismiss the portions that "fail[] to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

Accordingly, the Court will GRANT Plaintiff's Motion for Leave to File Second Amended Complaint (ECF No. 15).

## B. Effect of an Amended Pleading

"As a general rule, 'an amended pleading ordinarily supersedes the original and renders it of no legal effect.'" *Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001) (citations omitted). Thus, motions, such as motions to dismiss, directed at superseded pleadings may be denied as moot. *See Colin v. Marconi Commerce Sys. Emps.' Ret. Plan*, 335 F. Supp. 2d 590, 614 (M.D.N.C. Sept. 1, 2004) (earlier motion to dismiss was rendered moot by the filing of second amended complaint); *Turner v. Kight*, 192 F. Supp. 2d 391, 397 (D. Md. Mar. 25, 2002) (citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990)) ("A pleading that has been amended . . . supersedes the pleading it modifies . . . . Once an amended pleading is interposed, the original pleading no longer performs any function in the case.").

Notwithstanding that general rule,

> defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance.

6 Charles Alan Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2014); *see, e.g.*, *Garrett v. Aegis Cmty. Group, LLC*, No. 1:13-CV-131, 2014 WL 3572046, at *2 & n.4 (N.D.W. Va. July 21, 2014) ("extend[ing] [defendant]'s motion to dismiss to [plaintiff]'s amended complaint" after granting motion for leave to amend complaint). Accordingly the Court will consider the Defendant's Motion to Dismiss with regard to Walton's Title VII claim, raised in both his First Amended Complaint and his Second Amended Complaint.

Having found that Walton should be granted leave to file his Second Amended Complaint and that Defendant's Motion to Dismiss should be applied to the Title VII Claim in

Walton's Second Amended Complaint, the Court now turns to analyzing Defendants' Motion to Dismiss.

## II. BACKGROUND

The Court construes the factual allegations in the Second Amended Complaint in favor of the non-moving party, as required when resolving a motion to dismiss. Fed. R. Civ. P. 12(b)(6); *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994) (citation omitted) ("In reviewing the legal sufficiency of the complaint, this court must accept as true all well-pleaded allegations and must construe the factual allegations in the light most favorable to the plaintiff."). Legal conclusions enjoy no such deference. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, the Court determines the facts to be as follows.

### A. Facts Alleged in the Second Amended Complaint

On June 14, 2010, Walton, then a corrections officer at GCC, sent a request for religious accommodation in the form of an email requesting a schedule change to Stanley D. Mayes, the Chief of Security at GCC. (Second Am. Compl. ¶ 8.) The email stated:

> I wanted to know if there is another schedule that I could be placed
> on. My dad, who was also my pastor, passed away on June 10. I
> was serving under him as his assistant pastor. Since his passing I
> have taken on the duties of pastor at our church. I wanted to know
> if there is another schedule that I could be placed on so that I can
> attend services more.

(Second Am. Compl. Attach. B, ECF No. 15-2 at 2.) Chief of Security Mayes asked Walton if he had tried to work with his Watch Commander, and Walton responded, "I haven't spoken with them about this yet. Is that what I need to do?" (*Id.* at 2-3.) Mayes responded "yes." (*Id.* at 3.) Walton then sent a similar email to Watch Commander Joycetine Boone that stated, "I have taken on the role of Pastor" and "I would appreciate it if you could work with me on some Sundays so that I will be able to conduct services at my church." (Second Am. Compl. ¶ 8;

7

Second Am. Compl. Attach. C, ECF No. 15-2 at 4.) Boone responded that Walton "will need to follow policy and submit a leave request at least seven days in advance for approval/disapproval for any day you may need off work." (*Id.*)

During 2011, GCC began renovations that required the hiring of security staff on a schedule of Monday through Friday to work with the contractors doing renovations. (Second Am. Compl. ¶ 9.) Despite a GCC policy that provided that "[t]he availability of specialized posts such as a 5-2 would be advertised or posted internally for a minimum period of 2 weeks to allow staff to express interest in that post assigning by submitting a written request to be considered for the post assignment," GCC did not solicit applications for these jobs through job postings, and thus, Walton did not apply. (Second Am. Compl. Attach. D, ECF No. 15-2 at 5; Second Am. Compl. ¶¶ 9-10.) One of the officers eventually assigned to the Monday through Friday position told Walton that he had not requested the position, but instead had been asked if he wanted the position. (Second Am. Compl. ¶ 11.)

Walton discussed these positions with Warden Wright on August 1, 2011, and Warden Wright told Walton that the Chief of Security would choose the officers that worked the new schedule with the contractors. (Second Am. Compl. ¶ 11.) During a meeting with Warden Wright, Warden Wright told Walton that there was a position in the mailroom for which he could apply but that, at that time, a person needing an Americans with Disabilities Act accommodation was occupying the position. (Second Am. Compl. ¶ 12.) After the meeting, Walton emailed a request to Wright asking to be considered for the mailroom position, but GCC claims never to have received the request. (Second Am. Compl. ¶ 12; Second Am. Compl. Attach. E, ECF No. 15-2 at 6.)

On November 27, 2011, Walton learned about Title VII and sent another email to the

Watch Commander, Major William Jarratt, and Human Resource Manager Joyce Johnson

specifically requesting a religious accommodation and citing Title VII. (Second Am. Compl. ¶

15; Second Am. Compl. Attach. F, ECF No. 15-2 at 7.)  This email stated:

> I am C/O J. Walton.  I have been serving as Pastor of St. John
> Powerhouse Apostolic Faith Church since June 2010.  We conduct
> services every Sunday starting at 10AM and every Tuesday and
> Friday starting a[t] 7:30 PM.  For the past little over a year I
> haven't been able to conduct my services on every other Sunday
> because of my work schedule.  I am requesting accommodation in
> accordance with Title VII of the Civil Rights Act of 1964 so that I
> can fulfill my religious obligation.
>
> Title VII requires an employer, once on notice, to reasonably
> accommodate an employee whose sincerely held religious belief,
> practice, or observance conflicts with a work requirement, unless
> providing the accommodation would create an undue hardship.
> Under Title VII, the undue hardship defense to providing religious
> accommodation requires a showing that the proposed
> accommodation in a particular case poses a "more than de
> minimis" cost or burden.
>
> Thank you for your time and consideration in this matter.

(Second Am. Compl. Attach. F., ECF No. 15-2 at 7.)

On November 29, 2011, Walton was called to the Warden's office for a meeting with

Warden Wright, Major Jarratt, and Joyce Johnson. (Second Am. Compl. ¶ 15.)  During the

meeting, Walton was told that he could not stay in security and work Monday through Friday.

(Second Am. Compl. ¶ 15.)  Walton was offered a position in the mailroom and was told that this

would be a demotion and that there would be a five percent reduction in pay.  (Second Am.

Compl. ¶¶ 13, 15.)  The pay reduction was ultimately ten percent.  (*Id.* ¶ 15.)  In response to the

offer of the mailroom position, Walton stated that "if this was the only way that he could be

accommodated that he would accept it." (Second Am. Compl. ¶ 15.)  On December 2, 2011,

Walton's demotion to the mailroom position was confirmed via email. (Second Am. Compl. ¶ 18; Second Am. Compl. Attach. F., ECF No. 15-2 at 12-13.)

### B. Claims Brought in the Second Amended Complaint

Count One of the Second Amended Complaint alleges a violation of Title VII, specifically a failure to accommodate claim; Walton arguably alleged this same claim in his original Complaint and his First Amended Complaint. (Second Am. Compl. ¶ 19; *see* Compl., ECF No. 4 at 2; First Am. Comp., ECF No. 5 at 2.) Counts Two and Three are two new claims against the Defendants, alleging violations of VDOC's own internal operating policy and procedures. (Second Am. Compl. ¶¶ 20-22.) In Count Two, Walton asserts that GCC violated VDOC Operating Procedure 101.2 VIII B for failing to afford him a religious accommodation. (Second Am. Compl. ¶ 20.) In Count Three, Walton asserts that GCC "breached its duty when specialized post[s] were not posted in accordance to [VDOC] policy." (Second Am. Compl. ¶ 22.)

### III. Standard of Review

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted). The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* (citations

omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted). In considering such a motion, a plaintiff's well-pleaded allegations are taken as true, and the complaint is viewed in the light most favorable to the plaintiff. *T.G. Slater & Son, Inc. v. Donald P. & Patricia A. Brennan LLC*, 385 F.3d 836, 841 (4th Cir. 2004) (citation omitted). Legal conclusions enjoy no such deference. *Ashcroft*, 556 U.S. at 678.

### IV. Analysis

Having found it appropriate to do so, the Court will consider Defendants' Motion to Dismiss with regard to Walton's Title VII claim, raised in both his First Amended Complaint and his Second Amended Complaint. Furthermore, in the interest of judicial economy and as Walton is proceeding IFP, the Court will also exercise its statutory authority to evaluate the wholly new portions of Walton's Second Amended Complaint.

The United States Code provides that when a plaintiff is proceeding IFP the Court "shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); *see Emrit v. Bank of Am.*, 566 F. App'x 265, 265 (4th Cir. 2014) (dismissing a non-prisoner IFP plaintiff's complaint pursuant to § 1915(e)(2)(A)); *Michau v. Charleston Cnty.*, 434 F.3d 725, 728 (4th Cir. 2006)) ("Under 28 U.S.C. § 1915(e), which governs IFP filings in addition to complaints filed by prisoners, a district court must dismiss an action that the court finds to be frivolous or malicious or that fails to state a claim." (citing 28 U.S.C. § 1915(e)(2)(B)); *Hopkins v. Mayor and City Council of Baltimore*, No. WDQ-14-2786, 2014 WL 4658172, at *1 (D. Md. Sept. 15, 2014) (summarily dismissing a non-prisoner IFP plaintiff's complaint pursuant to § 1915(e)(2)(B)(ii));

*Bardes v. Magera*, No. 2:08-487-PMD-RSC, 2008 WL 2627134, at *8 (D.S.C. June 25, 2008) ("§ 1915(e)(2) does not contain language indicating that it only appies to actions filed by prisoners . . . [a]ccordingly, the fact that Plaintiff filed his action while a non-prisoner will not necessarily prevent this court from performing a § 1915(e)(2) analysis." (citations omitted)).

Ultimately, for the reasons discussed below, the Court will GRANT Defendants' Motion to Dismiss with regard to individually named Defendants Harold W. Clarke and Eddie L. Pearson and with regard to Walton's punitive damages claim, but will DENY Defendants' Motion to Dismiss with regard to Plaintiff's Title VII claim against VDOC and GCC. Additionally, evaluating the Second Amended Complaint pursuant to § 1915, the Court will DISMISS individually named Defendants Benjamin Wright and Joyce Johnson and further will DISMISS Counts Two and Three of the Second Amended Complaint.

### A. Count 1 - Title VII Claim

As to Walton's Title VII claim, Defendants argue (1) that the individually named Defendants cannot be liable under Title VII, (2) that punitive damages are unavailable against a governmental entity, and (3) that Walton has not sufficiently alleged a cognizable failure to accommodate claim under Title VII.

#### 1. Claims Against Walton's Supervisors

Defendants argue that supervisors cannot be held individually liable under Title VII, citing *Lissau v. Southern Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) and district court cases relying on *Lissau*. (Defs.' Mem. Supp. at 5-6.) The Court agrees. The Fourth Circuit has made it clear "that individuals are not liable under [Title VII]." *Lissau*, 159 F.3d at 180. "To permit individual liability would improperly expand the remedial scheme crafted by Congress." *Id.* at 181.

12

> [E]very circuit that has confronted this issue since the enactment of
> the [Civil Rights Act] has rejected claims of individual liability.
> These circuits have founded this conclusion on the language of
> Title VII and the fact that its remedial scheme seems so plainly tied
> to employer, rather than individual, liability.[4]    [The Fourth
> Circuit has] join[ed] these courts and reiterate[d] that supervisors
> are not liable in their individual capacities for Title VII violations.

*Id.* (collecting cases)*; see also Lee v. Virginia Beach Sheriff's Office*, No. 2:13cv109, 2014 WL

1493560, at *15 (E.D. Va. April 14, 2014) (holding that "[s]upervisors do not fit within the

definition of 'employer,' and [that] as such [they] cannot be held liable in their individual

capacities under Title VII," and that the only proper defendant was the Virginia Beach Sheriff's

Office); *Parker v. Eye Surgery Ltd., LLC*, No. 2:13cv710, 2014 WL 6085298, at *5 (E.D. Va.

Nov. 12, 2014) (citations omitted) (noting that the Fourth Circuit has held that Title VII does not

provide a remedy against individual defendants who do not qualify as employers); *Blackburn v.

Virginia Dep't of Corr.*, No. 1:01cv039, 2002 WL 242352, at *4 (W.D. Va. Feb. 19, 2002)

(citing *Lissau*, 159 F.3d at 181) (noting that "[s]upervisors are not individually liable under Title

VII," and ruling that "[t]he only viable defendant in this case is the Commonwealth of Virginia

Department of Corrections"); *Reeves v. Virginia Dep't of Corr. Educ.*, No. 2:02cv020, 2003 WL

76117, at *3 (W.D. Va. Jan. 9, 2003) (citing *Lissau*, 159 F.3d at 181) ("[S]upervisors are not

subject to individual liability for discrimination under Title VII.").

Moreover, no individuals were named in the EEOC charge and, as a general rule, a Title

VII action may be brought only "against the respondent named in the [administrative] charge."

*Alvarado v. Bd. of Trustees of Montgomery Cmty. College*, 848 F.2d 457, 458 (4th Cir. 1988)

---

[4] "Title VII defines employer to include certain persons who employ fifteen or more workers and . . . any agent of such a person." *Lissau*, 159 F.3d at 180 (citations and internal quotation marks omitted).  The Fourth Circuit explains that "the inclusion of 'agent' did not signal a congressional desire to impose liability on individual supervisors," but "[i]nstead, it simply represented 'an unremarkable expression of respondeat superior-that discriminatory personnel actions taken by an employer's agent may create liability for the employer.'" *Id.* (quoting *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 510 (4th Cir. 1994)).

(citing 42 U.S.C. § 2000e-5(f)(1)) (alteration in original).  There are exceptions to this general rule, *see, e.g.*, *Clay v. Consol. Pennsylvania Coal Co., LLC*, 955 F. Supp. 2d 588, 601 (N.D.W. Va. 2013); however, given that an individual cannot be held liable if he or she does not qualify as the employer, there is no reason to consider the exceptions in this case.

Based on the foregoing analysis, the Court will GRANT Defendants' Motion to Dismiss with regard to Defendants Harold Clarke and Eddie Pearson.  Based on the same analysis, the Court further finds that the Defendants added in the Second Amended Complaint, Benjamin Wright and Joyce Johnson, should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). Accordingly, the Court will DISMISS WITH PREJUDICE Defendants Harold Clarke, Eddie Pearson, Benjamin Wright, and Joyce Johnson.

### 2. Punitive Damages

Defendants also argue that Walton's claim for punitive damages[5] should be dismissed. Again, the Court agrees.  Pursuant to 42 U.S.C. § 1981a(b)(1), a Title VII plaintiff may not recover punitive damages against a government agency such as the two remaining defendants – VDOC and GCC.  *See Burke v. Virginia*, 938 F. Supp. 320, 324-25 (E.D. Va. 1996), *aff'd*, 114 F.3d 1175 (4th Cir. 1997); *McClam v. City of Norfolk Police Dep't*, 877 F. Supp. 277, 284 (E.D. Va. 1995).  Accordingly, to the extent Walton seeks punitive damages, such a claim will be DISMISSED WITH PREJUDICE.

### 3. Failure to Accommodate

Relying on Federal Rules of Civil Procedure 8(a), 10(b), 12(b)(1), and 12(b)(6), Defendants make several arguments in favor of dismissal of the First Amended Complaint.  As

---

[5] Walton sought punitive damages in the Complaint and the First Amended Complaint but he does not explicitly seek punitive damages in the Second Amended Complaint.

explained previously herein, the Court will consider those arguments to the extent that they are applicable to the Second Amended Complaint.

### i. Federal Rules 8(a), 10(b), and 12(b)(1)

Federal Rule of Civil Procedure 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint need not assert "detailed factual allegations," but must contain "more than labels and conclusions" or "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," to one that is "plausible on its face," rather than merely "conceivable." *Id.* at 555, 570 (citation omitted). Plaintiffs are also required to state "claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

Defendants argue that Walton's First Amended Complaint was a shotgun pleading that did not comply with either Rule 8(a)(2) or Rule 10(b). (Defs.' Mem. Supp. at 4-5.) A shotgun pleading is one in which the complaint "fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading . . . or if it is virtually impossible to know which allegations of fact are intended to support which claims(s) for relief." *Suntrust Mortg., Inc. v. First Residential Mortg. Servs. Corp.*, 3:12CV162, 2012 WL 7062086, at *7 (E.D. Va. Sep. 11, 2012) (citations and internal quotation marks omitted). Defendants also argued that it was "impossible to determine whether the Court has [subject matter] jurisdiction over this matter since the Plaintiff has failed to cite the particular law he claims was violated when his accommodation request allegedly was denied." (Defs.' Mem. Supp. at 4.)

15

Despite the deficiencies in the First Amended Complaint, Defendants concede in their Motion to Dismiss that Walton "appears to be claiming a violation of Title VII," and Defendants were able to frame a responsive pleading. (Defs.' Mem. Supp. at 1.)  As such, the Defendants were put on fair notice of the failure to accommodate claim that Walton describes in both his First Amended Complaint and Second Amended Complaint.  The Second Amended Complaint will not be dismissed for failure to comply with Rule 8(a).

Nor will the Second Amended Complaint, with its numbered paragraphs, be dismissed for failure to comply with Rule 10(b).  Under similar circumstances, courts within the Fourth Circuit have allowed *pro se* plaintiffs a period of time to amend their complaints to comply with procedural rules.  *See Rivers v. Hodge*, No 1:11cv644, 2013 WL 989957, at *1 (Mar. 12, 2013) (noting that plaintiff had been given an opportunity to file an amended complaint that would comply with Rules 8(a) and 10(b)); *Gordon v. James Madison Univ.*, No. 5:12cv00124, 2013 WL 2297186, at *3 (W.D. Va. May 24,  2013) ("Because *pro se* plaintiffs are held to a lesser standard than those represented, plaintiff should be given an opportunity to comply with Fed. R. Civ. P. 8 and 10 rather than risk an out-of-hand dismissal."); *Fontell v. McGeo UFCW Local 1994*, No. AW-09-2526, 2010 WL 3086498, at *16 (D. Md. Aug. 6, 2010) ("The Court will overlook these [Rule 10(b)] failures due to Plaintiff's *pro se* status.").  However, as Walton has already submitted a Second Amended Complaint that complies with Rules 8(a) and 10(b), further amendment is unnecessary.

The Court also finds no basis for dismissal pursuant to Rule 12(b)(1).

> When considering a Rule 12(b)(1) motion to dismiss, unlike a motion to dismiss pursuant to Rule 12(b)(6), "the district court may regard the pleadings as mere evidence on the issue [of subject matter jurisdiction] and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Therefore, this Court may weigh the evidence and

16

> resolve factual disputes regarding jurisdiction by considering evidence outside the Complaint.

*Johnson v. Portfolio Recovery Asscs., LLC*, 682 F. Supp. 2d 560, 566 (E.D. Va. 2009) (quoting *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004)) (citing *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995)).

As a prerequisite to filing a Title VII suit in federal district court, "[a] plaintiff is required to file a charge with the EEOC and exhaust his administrative remedies." *Id.* at 569 (citing *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002); 42 U.S.C. § 2000e-5(f)(1)). "The scope of the plaintiff's right to file a federal lawsuit is determined by the charge's contents." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009) (citing *Bryant*, 288 F.3d at 132). "[A] failure by the plaintiff to exhaust administrative remedies concerning a Title VII claim deprives the federal courts of subject matter jurisdiction over the claim." *Id.* (citing *Davis v. North Carolina Dep't of Corr.*, 48 F.3d 134, 138-40 (4th Cir. 1995)).

In his Second Amended Complaint, Walton indicates that he filed "a complaint with the EEOC." (Second Am. Compl. ¶ 17.) Moreover, the record herein includes a copy of the EEOC charge (ECF No. 16-1) and the EEOC right-to-sue letter (ECF No. 17-4)—attached as exhibits to a response and reply, filed by Defendants and Walton respectively. These documents demonstrate that Walton exhausted his administrative remedies with regard to his failure to accommodate claim prior to filing this civil action. Accordingly, the Court has subject matter jurisdiction over this action.

### ii. Failure to State a Claim - Rule 12(b)(6)

Defendants also argue, pursuant to Rule 12(b)(6), that Walton has failed to allege sufficient facts to support a claim for relief. (Defs.' Mem. Supp. at 7.) Defendants specifically argue that Walton has not met the "plausibility requirements of *Twombly* and *Iqbal*." (*Id.*) The

Court disagrees with Defendants and finds that Walton has alleged a cognizable claim under Title VII.

An employee bringing suit under Title VII may assert two separate theories of religious discrimination: disparate treatment and failure to accommodate. *See Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996). Here, Walton is alleging a failure to accommodate claim. (Second Am. Compl. ¶ 19.) In analyzing religious accommodation cases, the Fourth Circuit employs a burden-shifting scheme similar to the one laid out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See EEOC v. Firestone Fibers & Textile Co.*, 515 F.3d 307, 312 (4th Cir. 2008). Once a plaintiff makes out a *prima facie* case of discrimination, the burden shifts to the employer who must show that it was unable to provide the plaintiff with a religious accommodation without undue burden. *See id.* (citing *Chalmers*, 101 F.3d at 1019).

At this stage of the proceedings, the burden-shifting analysis is not implicated. That is, on a motion to dismiss, the Court need not evaluate the reasonableness of any accommodations or the burden an accommodation would put on the defendant. A plaintiff can survive a motion to dismiss a Title VII claim if he simply presents "allegations sufficient to reasonably infer a *prima facie* case of discrimination" under the *McDonnell Douglas* framework. *Petrosyan v. Delfin Grp. U.S.A., LLC*, 2015 WL 685266, at *6 (D.S.C. Feb. 18, 2015) (evaluating a motion to dismiss a Title VII claim).

To survive a motion to dismiss a claim for failure to accommodate, a plaintiff must allege facts sufficient to infer "that (1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; [and] (3) he or she was disciplined for failure to comply with the conflicting employment requirement." *See*

*Firestone Fibers*, 515 F.3d at 312 (citations and internal quotation marks omitted) (alteration in original).

With regard to the first factor, Title VII defines religion "to include 'all aspects of religious observance and practice, as well as belief.'" *See Chalmers*, 101 F.3d at 1018 (citing 42 U.S.C. § 2000e(j)). Because Title VII includes such a broad definition of religion, Walton satisfies the first factor by alleging in the Second Amended Complaint that he had a religious belief, observance and practice. Specifically, Walton alleges that he asked for a schedule change in order to lead religious services on Sundays. (Second Am. Compl. Attachs. B, C, E, F, ECF No. 15-2 at 2, 4, 6, 7.)

As to the second factor, Walton clearly alleges that he told his supervisors that he needed a religious accommodation. Specifically, Walton has provided several emails that he sent to his supervisors asking to adjust his work schedule so that he would not need to work on Sundays. (*See* Second Am. Compl. Attachs. B, C, E, F, ECF No. 15-2 at 2, 4, 6, 7.) In at least one of these emails, Walton specifically requested a religious accommodation so that he would not need to work on Sundays. (Second Am. Compl. Attach. F, ECF No. 15-2 at 7.) Thus, Walton's allegations in the Second Amended Complaint satisfy the second factor.

Finally, Walton has also alleged facts sufficient to infer satisfaction of the third factor by alleging that he received a demotion and a reduction in pay in response to his request for a religious accommodation. Under Title VII, the employer must "*actively attempt* to accommodate an employee's religious expression or conduct." *See Chalmers*, 101 F.3d at 1018 (emphasis added). Walton contends that GCC did not attempt to accommodate, but instead simply offered him a position that constituted a demotion. (Second Am. Compl. ¶¶ 11-15.) Moreover, Walton

19

alleges that he was simply offered the demotion to the mailroom position, despite the fact that Monday through Friday corrections officer shifts were available. (*Id.* ¶¶ 9-12.)

Given that the only employment change offered by GCC was demotion to the mailroom, Walton was then left to choose between his bona fide religious belief or accepting a demotion in order to remain employed with GCC. Noting again that the reasonableness of offering the mailroom demotion as an alleged accommodation—and Walton's acceptance of that demotion—is a matter that is properly evaluated at summary judgment or trial, the Court finds that Walton's allegations allow his Second Amended Complaint to survive a motion to dismiss. Walton has alleged that he only accepted the demotion as he believed it to be the only way to continue working at GCC without violating his bona fide religious beliefs. (Second Am. Compl. ¶ 15.)

Furthermore, Walton alleges that the demotion was not in fact the only way he could have continued working at GCC as there were allegedly Monday through Friday security shifts available at the time. (*Id.* ¶¶ 9-11.) Specifically, Walton alleges that he discussed the security positions that provided a Monday through Friday workweek with Warden Wright in August 2011, but that he was not offered one of the positions. (Second Am. Compl. ¶¶ 11-12.) Walton also alleges that he requested a religious accommodation in November 2011. (Second Am. Compl. ¶ 15.) Subsequently, Defendants only offered to accommodate Walton's religious practice conflict by giving him a demotion and reduction in pay. (Second Am. Compl. ¶¶ 13, 15.)

Based on the foregoing, the Court finds that Walton has alleged facts sufficient to infer satisfaction of the third factor of a *prima facie* failure to accommodate case. *See Andrews v. Virginia Union Univ.*, No. 3:07CV447, 2007 WL 4143080, at *6 (E.D. Va. Nov. 19, 2007) (citing *Chalmers*, 101 F.3d at 1019) (denying a motion to dismiss a religious accommodation

claim and finding that a demotion and pay reduction were "adverse consequences [that could]

properly be characterized as 'discipline'"); *cf. Lovell v. BBNT Solutions, LLC*, 295 F. Supp. 2d

611, 626 (E.D. Va. 2003) (citing *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999))

("Discharge, demotion, decrease in compensation, loss of job title or supervisory responsibility,

and reduced opportunities for promotion are examples of typical adverse employment actions.").

Viewing the alleged facts in the light most favorable to Walton, he has alleged facts sufficient to

infer satisfaction of the third element of a *prima facie* case for a failure to accommodate claim.

Accordingly, the Court DENIES Defendants' Motion to Dismiss with respect to Walton's

Title VII failure to accommodate claim directed against VDOC and GCC.

### B. Count Two – Procedures Manual as to Discrimination Charge

In Count Two, Walton alleges a violation of VDOC "Operating Procedure 101.2 VIII B."

(Second Am. Compl. at 8.)  Specifically, Walton alleges that "[t]he Defendant owed the plaintiff

a duty of being afforded religious accommodation if there is no undue hardship to Greensville

Correctional Center and the Virginia Department of Correction."  (*Id.* ¶ 20.)  In support of his

allegation, Walton has attached a single page from the VDOC Operating Procedure Manual.

(Second Am. Compl. Attach A., ECF No. 15-2 at 1.)

As an initial matter, the Court notes that the Operating Procedure Manual merely seems

to discuss VDOC's internal procedures for processing employment accommodation requests.  It

does not appear to create any cause of action for failure to follow those procedures.

Furthermore, the Court notes that "[t]he mere fact that an employer failed to follow its own

internal *procedures* does not necessarily suggest that the employer was motivated by illegal

discriminatory intent." *Vaughan v. Metrahealth Cos., Inc.*, 145 F.3d 197, 203 (4th Cir. 1998)

(citation omitted), *abrogated on other grounds as recognized by Leake v. Ryan's Family*

21

*Steakhouse*, 5 F. App'x 228, 232 (4th Cir. 2001).  Such a failure, however, could "serve as a basis for a wrongful discharge action under state law." *Id.* (quoting *Moore v. Eli Lilly & Co.*, 990 F.2d 812, 819 (5th Cir. 1993)).

In the instant case, Walton's employment was not terminated, rather he simply accepted a demotion.  Moreover, Walton does not specifically raise any claim for wrongful discharge.  Indeed, it is unclear what legal claim Walton raises in Count Two as Walton has also failed to allege facts that suggest the VDOC Operating Procedure Manual created any sort of contractual relationship between VDOC and Walton as to religious accommodation.  Additionally, to the extent that Walton raises a breach of contract claim, the Court need not accept his legal conclusions as to duty and breach.  *See Ashcroft*, 556 U.S. at 678.

Ultimately, the Court cannot determine what actionable legal claim, if any, Walton alleges in Count Two.  "Principles requiring generous construction of *pro se* complaints are not . . . without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).  District courts are not required "to conjure up questions never squarely present to them.  District judges are not mind readers." *Id.*

In light of the foregoing, the Court finds that Count Two of Walton's Second Amended Complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).  Accordingly, the Court will DISMISS WITH PREJUDICE Count Two.

### C. Count Three – Promotion Procedures

In Count Three, Walton alleges that Defendants violated VDOC "policy on posting of specialized post." (Second Am. Compl. at 9.)  Walton specifically alleges that "Defendant owed the Plaintiff a duty of being notified and given the chance to apply for specialized post . . . [and that] the Defendant breached its duty when specialized post were not posted in accordance to

22

[VDOC] policy." (*Id.* ¶ 21-22) In support of his allegation, Walton has attached what appears to be a questionnaire that VDOC answered ("Answered Questionnaire") and submitted to the EEOC as part of its administrative investigation. (*See* Second Am. Compl. Attach. D, ECF No. 15-2 at 5; *see also* Second Am. Compl. ¶¶ 9-10, 21-22.)

The Court first notes that Walton has not specifically put forward a legal basis for Count Three. Presumably, Walton is alleging a breach of contract; however, he has not alleged the existence of any sort of contractual relationship between himself and VDOC that would give rise to a private cause of action against VDOC for its failure to follow its internal job assignment policy. Furthermore, the Court finds that the Answered Questionnaire submitted by Walton does not suggest that VDOC owed any duty to Walton to list specialized posts, such as the 5-2 post, in any particular manner. The Answered Questionnaire is not a contract, and it does not suggest that VDOC was legally bound to follow any particular listing policy. Indeed, the Answered Questionnaire merely seems to discuss in broad terms VDOC's standard policy for listing specialized posts. Again, the Court notes that it need not accept Walton's unsubstantiated legal conclusions as to the existence of a contract and any related duties and/or breaches. *See Ashcroft*, 556 U.S. at 678.

Walton may disagree with VDOC's policy or may allege that it was not followed properly; however, any such disagreement or allegation is not a cognizable legal claim. It is not the province of courts to over-see the internal procedures of an employer. *See DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (explaining that it is not the role of the courts to "sit as a kind of super-personnel department [to weigh] the prudence of employment decisions made by firms charged with employment discrimination"). Thus, the Court cannot police whether or not the Defendant simply violated internal operating procedures.

In the absence of any factual allegations or documentation suggesting that VDOC or GCC owed some contractual duty to Walton to list the specialized posts in a certain manner, the Court cannot find that Walton has sufficiently alleged a claim that VDOC or GCC owed such a duty, let alone breached it. The Court again notes that district courts are not required to "conjure up questions never squarely present to them." *Beaudett*, 775 F.2d at 1278.

In light of the foregoing, the Court finds that Count Three of Walton's Second Amended Complaint "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). Accordingly, the Court will DISMISS WITH PREJUDICE Count Three.

## V. CONCLUSION

For the reasons set forth above, Walton's Motion for Leave to File Second Amended Complaint (ECF No. 15) will be GRANTED, and Defendant's [sic] Motion to Dismiss (ECF No. 11) will be GRANTED IN PART AND DENIED IN PART.   Specifically, Defendants' Motion to Dismiss will be GRANTED to the extent that (1) the individual defendants, Harold W. Clarke and Eddie L. Pearson, will be DISMISSED WITH PREJUDICE from this action and (2) any claim for punitive damages will be DISMISSED WITH PREJUDICE.  Defendant's Motion to Dismiss is otherwise DENIED.

Furthermore, having found it appropriate to do so under 28 U.S.C. § 1915, the Court will also DISMISS WITH PREJUDICE the individual defendants Benjamin Wright and Joyce Johnson.  The Court will further DISMISS WITH PREJUDICE Counts Two and Three of Walton's Second Amended Complaint.

An appropriate Order shall issue.

Let the Clerk file this Order electronically, notify all counsel accordingly, and mail a copy to *pro se* Plaintiff at his address of record.

_____ /s/

Roderick C. Young
United States Magistrate Judge

Richmond, Virginia
Date: May 21, 2015